Case number 24-3007. United States of America v. Raul Flores-Hernandez, also known as LTO, Appellant. Mr. Feitel for the Appellant, Mr. Booth for the Appellant. Good morning. Good morning. May it please the Court, Robert Feitel for Appellant, Raul Flores-Hernandez. Your Honor, I'd like to reserve two minutes for rebuttal in this case. During the course of my argument, I am principally going to focus on the argument made in our briefs that the government failed to adduce, even by a preponderance, sufficient evidence to establish the leadership enhancement which was imposed on the defendant in this case. If the Court were to agree with that argument, then it would not have to resolve the issue as to whether or not my client was eligible for a zero-point offender reduction under 4C1.1. And in theory, the defendant would have the opportunity to have his guideline sentence reduced from the 39 calculated by the trial court to 31 because he would be safety eval eligible under that analysis. So with that in mind, I wanted to note that I think it is pretty well established, and I don't think it's really disputed between the parties, what leadership requires under the sentencing guidelines for a four-level enhancement. The parties have not offered alternative definitions of what's required. It's simply that there be the exercise of power control in a hierarchical way over someone else in the conspiracy, and that the organization consist of five persons or more or be otherwise extensive. The part that we have focused on in our briefs, which I want to address with the Court this morning, is the issue of leadership in terms of power over other people. I just wanted to note before talking about some of the details that Mr. Flores-Hernandez was charged by indictment with being the leader of a drug trafficking organization called the Raul Flores Drug Trafficking Organization. In the district court, there are no co-defendants. No one else was arrested or charged in this case. And as far as we can discern, no one else has ever been charged in a federal district court case anywhere, not in this jurisdiction or otherwise, who was alleged to be a member of the drug trafficking organization that goes by his name. We think it is a drug trafficking organization of one, and we think that is the problem. We think that fact caused the government an insurmountable problem in trying to prove that he was the leader. Wasn't there testimony by a cooperator, Pinedo? He was asked approximately how many people in total did you see working in the defendant's cocaine trafficking organization? And he said about 20 people, including around five bodyguards. Why isn't that enough? First, Your Honor, what he said was later on we clarified his testimony, and what he said was they worked with him, not for him. It is in the record. I'll come up with the page in a minute. They worked with him. It is in the joint appendix at page 403 to 404. But independent of the notion that he worked for them, with them, I don't think, and I don't think the case supports the idea that the mere recitation of a list of people is a sufficient factual predicate to find that there is leadership. First of all, it is too facile. The question was how many people did you see working in the defendant's cocaine trafficking organization? And the answer was 20. Why is that not enough? Because first, later, he clarifies it to say that they were working with him and not for him. And I think that the law demands more than a list of people as having worked for you. There's no identification of what anyone did. And more important, to the extent that leadership requires both the exercise of authority over others, there's a recent Fourth Circuit opinion that says that it requires proof that someone followed your orders as well. I think as to both aspects of leadership in this case, the government's proof failed. There was not a single witness who testified that Mr. Flores Hernandez gave an order to anyone or that anyone ever followed it. So if merely listing a group of people as working for him does not appear to be to us sufficient under the requirements of the guideline to establish leadership, and I think that's because no one worked in his organization. Can it also be inferred from other testimonies, such as Pinedo testifying that he worked with Flores Hernandez to store more than 53,000 to 56,000 kilograms of cocaine and help transport $50 million in drug proceeds for Flores Hernandez, and he helped collect $14 million to $17 million in drug proceeds for Flores Hernandez? Can't you infer that they were working for him or that he had a cocaine trafficking organization just from the quantity and the scale of that enterprise? So in response, I have two responses. One, in the joint appendix at page 445, Mr. Pinedo Alvarez-Correo says, I wasn't a part of this conspiracy. He specifically and particularly disavowed being a member of any conspiracy. By his testimony, he was simply present watching the goings-on. So I don't think that puts him in a subordinate position sufficient to establish that he was a member of the conspiracy. But more to the point, Your Honor, there's nothing to say. The issue of drug quantity and how big Mr. Flores is obviously weighed large in the district court's decisions about this. But there's no case law, there's no jurisprudence that says simply because you were a large trafficker, you were automatically a leader. I think to the contrary, the cases are that labels are not enough and that even if you were an intermediary, it's not enough, absent some exercise of control. So I don't think that under the controlling case law and under the provisions of the guidelines, the mere fact that you were large or that you were involved in lots of cocaine or lots of money movement, automatically, without more, it makes you a leader. And I think there is nothing more— It was clearly erroneous, that this factual finding was clearly erroneous. And I just don't see why, even if it's not perfect or precise, this isn't enough. I can try to articulate it again, but I think that what happened— I think the district court articulated the right standard. The judge understood what the requirements of the law was. But I think in order to make the leap between the evidence that was presented, which I think really was a positive evidence, and the conclusion of leadership, the judge specifically said to, it's a matter of common sense. And that's what she said in her findings on the day that she ruled that my client was a leader. And I would be hard-pressed to say that we don't think that judges should exercise common sense in the rulings that they make, but I don't think it's a fair substitute for a failure of proof. And I do think there was a failure of proof here, and I wanted to go back to that point. Nobody who testified, none of the three government cooperators that were involved in drug trafficking, and they were extensively involved in their other businesses, not a one of them said that they worked for the defendant. They were pretty clear. Mr. Pinedo-Alvarez eschewed being involved in the conspiracy. Mr. Jack Sinoway-Amaguey, he said, I never worked for the defendant. And the third witness, who was named Elpidio Mahara, he was the leader of his own independent drug cartel that was one of the largest operating in Mexico. So I think that the failure of the government to identify anyone who actually worked for Mr. Flores caused this failure of proof. Those are people, for sure, that were identified by the witnesses as working for the defendant. And had the government at the hearing said to the witness, well, what did you ever hear? Putting aside the leading nature of the question, which there was problematic in this hearing, but if the government had said to the witness, were you ever present when Mr. Flores Hernandez gave an order to Licenciado? And you can imagine the follow-up, yes, I was, no, I wasn't. What did he say and what happened? There's none of that in the record of this case.  I do think it is necessary. Otherwise, it opens the door. I'm troubled, if you've read the briefs, I'm troubled by the nature of the cooperators and what I see is their incredible motivation to fabricate or at least to exaggerate, because they were beholden to the government for their liberty and for so much more. One of them was paid $100,000. But more to the point, if merely listing who you think worked for the defendant is sufficient, then it really does open the door to people basically fabricating testimony against others. And I'm troubled by it in the main, but I'm specifically troubled by it here, because there was no follow-up. It wasn't as though the witnesses weren't in front of the trial judge. The government had every opportunity to ask, and they didn't ask. And to be absolutely clear, my colleague and I, we did not follow up. We did not open that door to try to help the government. I assume the reason the government didn't ask the witnesses is because the answer was they didn't know. And Licenciado, I mean, the actual translation is college graduate. It also can be used to be an attorney. We have actually one of Licenciado in the court today. But merely saying A, B, C, D, E, and F and G worked for the defendant seems to be a wildly insufficient predicate for proof of the essential element of leadership, which is control over another person. If we can assume that those four or five people, Chani, Chikaro, Luciano, Alfaro, Enriquito, worked for the defendant, I don't understand why it wouldn't follow that they were taking orders from the defendant. So in the first instance, Your Honor, we do not concede, oh, I've managed to beat into all my time, we do not concede that they worked for him. And I think one element of that- The witness said they worked for him. But without more- And the district judge believed the witness. Even assuming, for argument's sake, as lawyers always say, saying that someone worked for Mr. Flores Hernandez is not the same as saying that he gave them orders. I mean, the guideline doesn't say that you're a leader if you have an organization. It says you're a leader if you directly exercise control over someone else. Take, for example, Luciano paying people who worked at the docks, paying them for Flores. Why would he have done that if Flores hadn't told him to do it? I think the answer is the government should- The naked response is the government should have asked, why did he do it? Were you ever present when orders were given? You have precedent saying circumstantial evidence is enough for this sentencing guideline. For this particular enhancement. Circumstantial evidence would be enough, I think, had there been more than the mere recitation of the names of people, Your Honor. It just seems like either they were doing it because they were told to do it, or they were, I guess, like doing it out of the goodness of their heart, sort of like a service project. It seems implausible that you transport money for a drug trafficker for any reason other than you were told to transport the money. I will offer a completely, I believe, valid alternative theory. Drug trafficking is no longer soups to nuts. It's no longer one cartel controls everything from the production in Colombia to its distribution and transportation. People use money launderers, and they act as independent contractors who do the work. It could very well have been that Mr. Flores Hernandez contracted with someone to move the money. That person did it, and to facilitate his independent conspiracy to money launder, he bribed people at the ports or elsewhere, at the airports, to get it done. But that doesn't, without more, suggest that my client ordered it to be done. So I just want to see what alternative scenario there is. You might disagree with a bit of the premise of this question, but I'd ask you to kind of go with what I'm assuming. I'm assuming that Flores ran an international drug trafficking operation for 30 years that transported tens of thousands of kilos of cocaine worth millions and millions of dollars. Did he walk all that cocaine across the border himself? During the defense, the answer is no, he did not. Do you think he had to have people working for him to pull off that 30-year multinational operation? There are two responses. One is of record, which is that he had a business that worked with what they call black market goods. During the defense case, we put on the testimony of his attorney, Real. And he said that the defendant had a business selling black market refrigerators and other household goods. And so it could have been that the money was laundered through that aspect of the business. But it's not entirely clear. And I don't think the burden is on the defendant to prove where the money went or how it was moved. For all I know, it could offer, well, anyone knows on this record, which is what matters in this appeal, is it could have stayed where it was in the United States. The cocaine could have been sold in Mexico. I mean, there's no, they didn't do any deep dive into what happened anywhere. Because the people that they presented, the government's witnesses, didn't work with Mr. Flores. They didn't even, they didn't work for him and they barely worked with him. They were one-off events. I think that was, I think that's the fatal aspect of the government's case for proving leadership. It's that there is no, Your Honor, just again, it wasn't as though the government didn't have three witnesses up on the stand. And it wasn't as though they were precluded from asking. They didn't ask the questions that inured to the elements of leadership. And is your, as I understand it, there's at least two elements of the sentencing enhancement. One is the organization has to be five or more participants or otherwise extensive. And then a second element is that the defendant has to have been in a position where he was telling at least one person what to do. Are you fighting both elements? As to those issues, I think the evidence of how many people worked for him is de minimis at best. Because it is nothing more. You can satisfy that first element with simply an otherwise extensive operation. You don't think this operation was as extensive as an operation with five participants? If the government had induced evidence, perhaps I would be in a different position. But the government didn't ask any of the details about how this drug-trafficking organization allegedly worked. It had the one-off witnesses who were involved in discrete events. And there was no overview. And that flows back to the primal point that I'm trying to make is the government proved this case with people who were not involved with Mr. Flores-Hernandez. And I think that failure prevented them from proving, even by a preponderance, that he was a leader. There's some evidence that his son was involved in the operation? There was a reference to his son. Who did his son work for? On the record, I believe there is a reference to who his son worked for. And I believe that the answer is a matter that I'm not able to disclose completely in this public forum. But suffice it to say there was no evidence of record that his son worked for him in this organization.  My only final comment is it seems that you're saying that we need to have direct evidence. And circumstantial evidence will not do. And is there authority for this? I would be hard-pressed to argue that circumstantial evidence is not enough because everyone who's ever been in a courtroom has heard the instruction about circumstantial evidence being sufficient. What I'm saying is that this variant of circumstantial evidence is insufficient. If simply naming names without further elucidation – I don't believe that naming names without further elucidation carries the burden of proof, even by a preponderance in this case. And again, if there was something here, you would have thought that someone from the government's prosecution team, three different prosecutors examined these witnesses. Somebody would have said, hey, it's not as though the definition of leadership changed somehow right before this sentencing hearing. I mean, it's been pretty constant throughout. You would assume the prosecutors knew. No one asked. And I think it's their failure of proof because it's their burden of proof. And that's where we end up in this case. So I have gone over. That's okay. I just had two questions. So one on the same topic. There was testimony from Alvarez Correa about this Enriquito delivering money and saying it was on behalf of Mr. Flores Hernandez and then unpacking cocaine as well. So that's much more specific than just a list of names. Those are actual activities and at least testimony that someone said they were doing it for, not with, for Mr. Flores Hernandez. Why is that not enough? Is there something I'm missing? I think in the context of the way the evidence came out, it was not entirely clear, even from Pinedo Alvarez Correa, that they were with or for the defendant. It was somewhat murky. But at the end, he does say they didn't work for him. They worked with him. And again, if unpacking the cocaine had been at the order… He said that for Enriquito too. Excuse me, Your Honor? He said with him for Enriquito. If they had provided some context and some detail, maybe it would have been enough. I can't be sure. Did he say Enriquito only worked with and not for Mr. Flores Hernandez? I have to look back at the record. But even assuming that he said he worked for him, without context, it is impossible to conclude that it was a leadership relationship. The context here is delivering money and unpacking cocaine. That would be a job that lots of people have who don't work directly for the defendant. Because as I mentioned before in response to Judge Walker's questions, trafficking is diffused. It does have different people. This could have been resolved. This could have been easily resolved with questions that probed into who, what, when, where, why, and how. None of that was elicited. That required the district court judge to sort of resort to the, well, common sense tells me that because of the quantity, he must have been a leader. I just want to point this out. Let's assume in a hypothetical that there's been a lot of press lately about the United States blowing up what they call fast boats in the Caribbean off the coast of Venezuela. But there are lots of other defendants who were caught on those boats under the Maritime Drug Law Enforcement Act, the MDLEA. So under the judge's thinking, if you were a member of a crew and you were in a fast boat that was traveling under cover at night, and there were 300 kilos in the boat, that you would also be a leader if quantity is the sine qua non of leadership. That obviously is not the case. People that are members of those crews are the lowest ranking levels of the conspiracy. Although I should say that there are times when boat members become leaders, too, by simply saying to someone else, could you get the tuna and the water, you know, for the boat crew? But I think the government is obliged. This was a case in which we contested all of the guidelines. This was not just this one. We contested a lot of the other ones, and we had success. But it sort of felt like the judge was going to give one for the home team. But I think that, you know, the government has the burden of proving these matters. I mean, they alleged that it was true. And I think this is to the extent that there were any sort of single points of evidence about this issue, even whether considered solely or independently or collectively, I don't think they rise to the level even of preponderance in this case. I just had a question on the drug weight you had contested in your brief. But Mr. Flores-Hernandez pled to selling cocaine up to 450 kilograms. So why do we have to get into that whole issue of who should be credited about what just on the drug weight? I'm going to leave it to the briefs. I understand your Honor's point. I think it is 450 or more. So it was within the range that he agreed to in his statement of facts. And I did not make much in my rebuttal brief nor here about quantity. Just to make sure I'm clear on that.  Any other questions? We'll give you a few minutes for a rebuttal. Thank you. Thank you, Your Honor. May it please the Court? The District Court correctly found that Flores was the leader or organizer under Section 3B1.1a. And there's three primary interrelated reasons for that. I'd like to start them in sequence. Flores was a major cocaine trafficker. He was responsible for 53 to 56 kilograms of cocaine. And he paid a portion of those proceeds to the Sinaloa cartel. The District Court found, and this is on page 246 of the Joint Appendix, that Flores had deals with multiple high-level drug dealers for hundreds of kilograms of cocaine. That fact, which in our view is not clearly erroneous, maps into the decision-making authority, the claimed right to a larger share of the fruits of the crime, and the nature of the participation in the offense factors in Application Note 4 to 3B1.1a. Second, the District Court found that Flores discussed supplying planes for drug dealing to Ramirez. And they also discussed drug shipments involving kilograms of cocaine in January 2017. That's in Joint Appendix 221 to 222. But that fact maps into the exercise of decision-making authority and the planning and organizing the offense factors in Application 4 to Guidelines 3.1. I think the prong that they're contesting is the demonstrated exercise of leadership over at least one person, which I don't think these points go to. So I think that's the one that we've been focusing on, unless my colleagues feel otherwise. As to that, this was a very strange case for the government. I mean, as you said, there were no witnesses. Despite this very, very vast organization, there wasn't a single witness who said, I worked for him. And the testimony, and maybe some of this was translation issues, I don't know, but it's the government's burden, was really rather elliptical, whether people were working with him or for him. And it was just, and you had witnesses who, again, themselves only had sort of fleeting interactions, if at all, with Mr. Flores-Hernandez, and then were sort of elliptical in their testimony. So it just seems to me that very strange, and it's so big, that the government couldn't find one person that actually says, I worked for him. That was going to be my third point, and before I get into that. Oh, that's all right, Judge Millett. The question that has been raised about whether I worked for him or with him, I would like to quote from the transcript to point out exactly how that came out. And this is on JA-403. And it said, did the defendant have workers or people who worked for him who would receive his portion of the cocaine? The answer is yes. Now, you go back to the next page, and then the question is, were any of these people related to the defendant? And it's at that point that the witnesses know they worked with him. Well, our submission is, is that particular with him really doesn't count for a whole lot. Because the question that was being asked to him at the time was, were these people related to him? This witness wasn't being asked to give a formal definition between workers for or with for purposes of deciding whether or not there was supervision under 3P1.1. So we give absolutely no weight, and we think the district court properly gave that no weight, even though he didn't do it directly, in discounting the they worked with him sentence. Again, that's on JA-404. We also have to show, to get this leadership enhancement, that the person that was managed, that he was the leader of, was a participant in the enterprise. And participant has a specialized meaning. That is, you have to show that every element of the crime, including mens rea, was met as to those persons. Where did the government do that? There was a lot of circumstantial evidence that many of the workers for Flores knew what they were involved with. So when you have someone say 20 people worked for him, that doesn't do anything to establish the element as to any individual, including, of course, most particularly, mens rea. A lot of people could work for someone without, in other capacities, errand boy, bodyguard, without knowing what the operation is. So what evidence is there of mens rea as to one of these participants? Well, I am talking about, there are two particular facts that are involved here with respect to supervision. He supervised Pinedo, who not only cleaned the tanks containing the cocaine that was delivered to Flores and his brother, and that's a factual finding at 215, but he also shipped $50 million in drug money back to Colombia for Flores. And that's a finding on JA 216. Now, if Pinedo is shipping $50 million back to Colombia, he knows what he's in for. You're not shipping $50 million. Did Pinedo work for him? Did he say he worked for him? He had his own sort of, they were sort of working with each other. But remember, Pinedo stated that he was cleaning the tanks, and of the tanks that came out of the cocaine that was coming out of the tanks, half of it went to one of his relatives and the other half went to Flores. I get that. I'm just asking if you can point me to the testimony record where Pinedo says, I worked for Mr. Hernandez as opposed to I had my own operation, this is what I did, I got stuff in and out of these boats, I had my relationships on the docks, I got it out, I did this much for this group, this much for this group, which sounds like he's sort of an independent contractor. But if there's something that says he was for working in that capacity, working for Mr. Flores Hernandez. I cannot point you to anything in the record in which any one of the three witnesses said that I was working, well, that where Pinedo said I was working for him using that particular language. But again, the circumstantial evidence is, on the one hand, he is cleaning out the oilers, the tankers that contained the cocaine, of which Flores is getting half of that, and that's 1,000 kilograms per pop. And then later on, he's shipping $50 million in drug proceeds on behalf of Flores, and I believe that's the finding that the district court made at JA 216. So if you take those two facts together and look at all the circumstances in this case, I think that the district court's finding of fact that this Pinedo was working for Flores is certainly not clearly around. Can I just ask one clarification, because this might be, you know, I don't know that common law employment concepts wrap onto here. So your friend on the other side has said, look, the way these things operate is people all have their different roles and they just have relationships and contract with somebody to do the shipping or collecting the money for them or laundering the money. Do we know, for purposes of this guideline, if you contract with somebody to, say, carry your cocaine across the border or put it on a ship, does that count as working for someone, this contractual relationship, or do you really have to be what we would, in a sort of common law sense, think of as an employee? I don't have any idea what the case law is. This court has said over and over again that you have to have some control over another person. It has control over people who paint your house. That is true. But it has also said with respect to leaders as opposed to managers or supervisors, they're more involved in the strategic planning than the day-to-day operations. I'm just asking, let's say Mr. Flores Hernandez's view is correct that he had his thing and then he worked with this person, you're the launderer, you're the transporter, you're the bribe payer, and so at some level they're sort of equal level people. On the other hand, he's paying them to do something for him. So does that count? If he's paying them, again, the words that are used in Application Note 4 are control and authority. And our submission is that, for example, Does control and authority include having someone agreeing to do work for you? We might look at it as an independent contractor, but they're still agreeing to work for you? I would say there's elements of control there, and in this particular case, again, we're not talking about Pinedo delivering $2 to the Colombian drug dealers. It's $50 million that he's doing for Flores. And I think a district court can find, this is not an edge case, Judge Millett, where you're delivering $50 million to somebody. That person, Flores, has control over you. And there's another person involved. I only have 30 seconds left. There was, for example The court asked, straight up, the government, whether any of the cooperators were working for Mr. Flores-Fernandez, and the government agreed they were not. I don't have that exactly. I believe that the testimony that, based on the district court's findings, on around 215 or so, J214, that he found that they were working for Mr. Flores. And one other person they mentioned, he definitely supervised Chicklin. Now, Chicklin was the individual who drove the truck that had the $14 million in drug money that Sineway had helped unload from the warehouse. Now, they took the $14 million, they put it in a truck, and it was delivered to Chicklin, who was going to give it to Flores. Well, if Flores is not supervising Chicklin. The court said, it's a little indirect, but any of the cooperators were not included in the five because he wasn't, by their own admission, this defendant wasn't their leader. That's correct from the government. So the government admits that none of these five cooperators were under Mr. Fernandez. Flores was not their leader. Flores-Fernandez was not their leader. I would, again, the district court made findings of fact with respect to the individuals who were working, whatever the government said earlier. The district court findings are not clearly erroneous. And, again, in addition to the supervision aspect. I'm sorry. I just want to make sure I've got this right. If your argument is that one of these cooperators said what he did, that he was working for Mr. Flores-Fernandez, the government disavowed that, and the district court cannot credit something the government disavowed. The district court did credit the testimony of Pinedo. On lots of things, but not as to whether any of the cooperators themselves worked for Mr. Flores-Fernandez. The government disavowed that. But the government's, our position here is that there was sufficient control and authority. The district court made that finding, and that's not clearly. Where's the district court's finding that the cooperators worked for Flores? Any one of them. I don't have that finding right in front of me. But JA-243 is where the government says that's right. None of them worked for him. If you can find where the district court found it, Mr. Booth, I'd still be interested because we may, and maybe I'll agree on this, but I'm not sure that the government could waive away a fact in the record if the district court then finds that fact. But it's not clear to me that the district court even did find the fact you're saying they did. So I'd be curious to know where the fact is. I would have to relook at it again. I don't have that right in front of me. But I do have again on JA-245 and 246 that the district court says that the government names individuals supervised by the defendant. And then he says that Sinoway testified that the defendant had numerous workers but was unable to name any. And then the district court then makes the finding at JA-246, not only did the witnesses identify by name more than four workers, five were workers supervised by the defendant. His narcotics trafficking qualifies as another by his extensive legal operation. So the district court – I think we're mixing apples and oranges here. Because I think what you're saying is that these cooperators testified about other people who worked for Mr. Flores-Hernandez. That's what the district court credited. I was just trying to make clear that the government said you're not claiming any of the cooperators themselves worked for Mr. Flores-Hernandez, and that's what the government agreed none of them did. I would agree that, again, with respect to Ramirez, Ramirez was not under Flores' control when they discussed – All cooperators. Right. But he was not under his control. So Ramirez was the leader at one point of an earlier cartel, and he and Flores discussed planning to – I don't know why you're disputing this, because it doesn't matter, does it, whether the cooperators worked for him, as long as somebody did. Well, I agree with that. I may have misunderstood Judge Millett's question. But I think there's – It costs you nothing to concede that the cooperators didn't work for him, but they provided evidence that other people did. I would agree with that, except I just – I may have been confused by Judge Millett's question. I apologize for that. But I think there's certainly sufficient evidence here based on the district court's finding that Mr. Flores did supervise a number of individuals in this case. And it is not the case that the witnesses – the witness testified that they merely worked with him instead of for him. That was in response to a particular question about whether they related to the defendant. There you go again. To Judge Millett's question and to Judge Payne's question, why not either say the cooperators – there's not evidence in the record that cooperators worked for him or point us to where in the record the evidence shows, and in particular, the district court found that the cooperators worked? I will agree with the first one that cooperators did not work.  I was a little confused by your question. Sorry about that. No, no, no. That was my error, but I was going to say I would rely again on around pages 245 and 246 of the Joint Appendix. So do you think it's the person who worked for Flores that's – if you could just pick one person, it's like this person is the best evidence we got that Flores was in charge of somebody? Well, he was definitely in charge of Chicklin because Chicklin, for example – That would have been my guess. That would have been my guess because Chicklin – What did he tell Chicklin to do and what did Chicklin do? Yeah, what happened was that Chicklin was responsible for taking the $14 million that Sinaway and his father had unloaded out of the warehouse, and he put that in the trunk, and that was going to be delivered to Flores. So he definitely supervised that individual. And one of the cooperators said Chicklin worked for Flores. Yes. And the – yes. I also think on JA-408, there's a lot of testimony about bodyguards. And the question was, you know, how many people in total did you see working in the defendant's cocaine trafficking organization? Answer, about 20 people. What are the variety of jobs or tasks that they did for him? They were bodyguards or people that worked for him. And then there was more questions. How many? There were five. What, if anything, did they have on them? I never saw anything on them. They were talking about weapons. But I knew they protected him. That seems to be people that worked for him. Well, again, the district court did refer to the five bodyguards in his findings. Is there mens rea? Did the government have evidence of mens rea, the bodyguards, and these other unnamed 20 people that worked for him themselves? Any one of them individually met the definition of a participant? There is no direct evidence in the record. Okay, what's your indirect evidence? Indirect evidence. Those bodyguards or the 20 people that are unnamed as to mens rea. I mean, he could have somebody who mows the grass. He could have somebody who does the dishes, does the cooking, cleans the house. And that's normally not going to be enough. That's not enough for the enhancement, unless you can show that that individual met every element of the crime, including mens rea. I would say it's a fair – I would argue that circumstantial evidence is, if you're a bodyguard for a drug dealer, you probably have some idea why you're bodyguarding him. Now, again, I will recognize, Judge Millett, there was no direct evidence in the record. But, again, the judges could make inferences. Bodyguards must know. The government gets to say – I mean, they could know he's a super rich person. That's a lot of testimony about his great big house. He was a super rich person living in a very dangerous area of the country. But looking at the evidence as a whole – Everyone who has bodyguards is not because they're engaged in criminal activity. That is true, Judge Millett. But I think, again, if you look at the evidence as a whole there, look at who they were bodyguarding him at his palace where he was having parties. And as Flores said, he was bringing in all the drug suppliers. Again, that's just one little bit of evidence. I mean, look, there are plenty of celebrities that are going to have bodyguards at their big mansions and their big parties. It's just – it really is the government's job to sew this up. So I think that is not your strongest ground at all to be relying on for meeting this element. This government just didn't do anything to sew it up. Well, again, I emphasize, again, as I mentioned to Judge Walker – Did Judge Powell assume that the bodyguards had mens rea? She didn't make any mention of that. Okay, so we don't even have a fact finding on that that we can credit. Right, but as I mentioned to Judge Walker, I think the most important supervisee in this case was Schicklin because he was taking the money that came from the women. What is the testimony about Schicklin? I believe it's a JA709. The finding is, I believe, is a JA245. We're on – we're on 709, or the next page is your best evidence of – I get you got there was lots of money. If I'm wrong on that, I will correct it in a note to the court. But I believe that JA245 is where the district court makes the finding about Schicklin. I guess it says Schicklin was going to pick up the truck and deliver it to Mr. Flores. Then he said, did you get paid? And he says, not really. It was my family business. I wasn't in the payroll per se. It was my stepfather's business. So it sounds like he was working for his stepfather. Well, the $50 million –  That's not Schicklin? That was the witness, right? Schicklin didn't testify. He mentioned Schicklin. The witness is talking about Schicklin. So the witness is his family's business. Got it. Thank you. He doesn't say much about Schicklin, though. I do have the citations in my brief with respect to Schicklin, even though I don't have exactly the whole transcript right in front of me at this point. I was just looking at the record as I was sitting here and saw on page JA405, there is some detailed testimony about Licenciado and about what he would do on behalf of LTO. He was in charge of all the loads that would arrive and be delivered. He was the one that would get a hold of the people that had to work. He was arranging or getting people to work. He was the person who would pay everybody at the ports and wherever they would be working. I guess you could infer, Mansouriah, from that. And my impression is that the vehicle on 709 that Schicklin picked up, he wasn't just picking up a vehicle. He was picking up a vehicle with $14 million in cash. And bringing that $14 million to Flores. Our view is that Flores was definitely supervising him. On 711, they call him provider. Mr. Flores paid his providers. However, you know, Schicklin wasn't a provider. Right? It's a chain. You receive the profit from yourselves and you need to pay your providers and your bills. It's just another business. Do you have an idea how Mr. Flores paid his providers? Everything was in cash. So I'm back to my question. Are providers? Do providers count as? It would depend, again, on what exactly. Let's say Mr. I don't know. It's really confusing testimony. Let's say Mr. Schicklin has a business providing money delivery services. Are home paying delivery services sufficient? Are you aware of any cases that have said that type of relationship is sufficient? I haven't seen anything specifically on that point. But, again, I think in this particular case, the district court could have inferred that when Schicklin was taking that several million dollars in the truck that Sineway and his grandfather had taken out of the warehouse, that that was drug money and that he was working for Flores at that time. And that's a perfect example of supervision in this particular case, in addition to all the other leadership traits that Flores exhibited in this case. Can you take a look at 711, the J711, in reference to providers? I think they're not saying Schicklin was the provider. I think they had. I'm sorry. I don't have that record right in front of me on 711. I don't.  JA. I don't have it in front of me now. What did Schicklin do for Mr. Flores? Answer. Like, everything. A little bit of everything. Question. Do you know what he was going to do with that cash after he picked it up? Answer. Not really. I think just deliver and pay to. I really don't know. But the whole purpose of having Sineway and his father unload the money in the warehouse was to give it to Flores. I'm just feeling like if somebody is working for me, it better be quite clear to them what they're supposed to do with it. This guy doesn't seem to know for sure what he was going to do with it. Okay. Any other questions? Thank you very much. May I proceed, Your Honor? Yes. We'll give you two minutes. I will be brief. I wanted to say that I think this conversation and delving into the sort of really minutia sort of exemplifies why the government failed to prove a leadership on the part of Mr. Flores Hernandez. I did want to refer the court to, I believe it's the commentary with respect to the leadership enhancement. It says that titles are not controlling. I mean, titles, labeling someone boss or chief of operations is not sufficient. And I think in the same way, the witnesses labeling other people as workers is insufficient, actual absent, some kind of actual predicate. I read through the Chicklin testimony. I mean, he picked up the money and the witness doesn't know what happened to it. And even then it's not clear that that person identified by the nickname Chicklin was working for Mr. Flores Hernandez. The government could have said, do you know what the relationship was? Did he work for Mr.  For all we know on this record, he was an independent contractor doing it for his own business and that he wasn't going to get paid unless he delivered the money. It's it's, it is impossible to understand as to the original comments. So hypothetically. And we're like doing the independent contractor analogy here, but I'm not sure it totally translates. I think in terms of command and control, usually it's the person who receives pages that is being directed. And it's the person who pays the wages, who is doing the director. And it seems like this operating witness had $14 million that was owed to Mr.  And the testimony was Chicklin worked for Flores and Chicklin transported the 14 money, 14 million from this cooperating witness to, to Flores. So, again, either Chicklin did it because he just likes to drive around for fun, or he did it because Flores was paying him to transport that $14 million of Flores's money to Flores. And if he was paying him to transport it, which it seems like he, he had to have been that's that's one person who was being directed by Flores. And it's a participant with the mens rea because it, you, you know that if you're bringing $14 million in cash, very high likelihood, it's illicit. I'm going to disagree as a sort of an overarching factual matter. I do think that the independent contractor analogy is equally likely in the scenario as it is that Chicklin worked for the defendant. There is an absence of proof as to the nature of the relationship between them. Other than the vague desert designation as a worker. We don't know if Chicklin was hierarchically money launders. Sometimes are hierarchically superior to traffickers because the purpose of drug trafficking is to collect the money. If you don't have someone to move your money, you're basically out of luck. I don't have any case that says, this is what I was trying to ask government about says is that you contract with somebody to do this money delivery or cocaine delivery service for you, that that is not sufficient under the guidelines. This is just, we're not engaged in employment relationships here at that level of, of care that we do in civil cases. And I'm just curious as to why it wouldn't be enough that you hired someone and pay them to do this job for you. So in the appellant's reply brief at page six to seven, I cite a number of more recent cases, including United States versus Martinez. In the parenthetical, I noted that the court concluded that evidence that the defendant orchestrated drug shipments was involved in wire transfers and quote, mobilized other persons to mail and receive drugs was not enough to establish a leadership. And before it is a case from the seventh circuit, which talks about how an aggravating role adjustment is not appropriate for a middleman. When you say Martinez, do you mean Martinez Vega? I just want to make sure I'm on the same case as you. No, I said United States versus Martinez. The citation that I have in the brief is five, eight, four F third, 10 22. It appears at page seven of the, of appellant's reply brief. Okay. And there's another case that appears on the, on the proceeding page about aggravating roles in middlemen. I think that the idea that everyone had to delve into the woods or the weeds, so to speak as to what she gone did and speculate really, because that's what it is on the record before this court as to how he got paid and what the relationship was is prima facie proof that the government failed to establish the leadership enhancement in this case. And I think you could, I have looked at this record. I participated in these hearings below. This is the only case I've ever seen in which the government didn't call someone who said, yes, I'm not saying it's required that you find somebody to work for the defendant. I mean, obviously you can't, no one would have that as a, as an absolute requirement of law, but if you're going to call someone who, who didn't, and all that, if I, I read, I reviewed the page that judgment let refer to the government specifically issued the idea that these three cooperators worked for Mr. Flores Hernandez. So if you're going to call someone outside the parameters of the case, I think it ought to be obligatory on the government to actually prove his case by more than titling people as workers and more than vague generalities about what they may or may not have done. I think that the law demands a government's proof was so weak. Why did you guys plead to the information? Why don't you just take it to trial, put them to the burden of proof. Maybe they had other evidence that they didn't bring up at a sentencing hearing, which is, you know, a different standard of proof. It could be more summary. They might've had other evidence that they didn't bring, but I don't, I don't know that this is relevant, like at the sentencing stage to say like, Oh, they're, their proof was not strong because these are cooperators who did not work in this organization that they're not required to bring people who worked in the organization. Maybe they had people who did, but they didn't bring them to the sentencing hearing. And if you think that the evidence was so weak, why did your client plead to the information? The client made the strategic decision to plead guilty to the indictment without an agreement, because he would not accept the majority of the enhancements that the government tried to insist upon. That is for bribery for using airplanes and the like, which, which the district court denied as to the, as to the position as to whether or not the government had other witnesses that they didn't utilize for the sentencing hearing. That could very well be the case, but the burden is on the government. The burden is not on the defense to disprove it. The government failed to do so. That the burden is preponderance of the evidence. It's a much lower standard than at trial. And you come in and say that they had a weak case, but you pledged the indictment. Yes. On the merits for one for five kilograms or more of distribution, the defendant did not admit to leadership in his declaration. He specifically said that he was an intermediary, which is the in his, in the statement of facts that was presented before the district court. And that's the position that we continue to take before this court, because the government has not proved to the contrary that he was anything more than an intermediary. And the size of the amount of drugs and the quantity of money that gets moved is not, I don't think in the context of the evidence adduced at this particular contested sentencing hearing sufficient to satisfy the government's burden of proof, even at a preponderance. The forfeiture that you conceded to would have meant, you remember how many thousands of. No, the judge, I think, imposed in the millions because it was millions of dollars.  And then thousands of kilos. We did not agree. We did not agree to the amount of the drugs. We agreed to the amounts of the forfeiture. Yeah, but that's just mass. You just divide the amount of the forfeiture by the value of drugs. True. But I don't believe that the admission of the acceptance of a forfeiture order automatically is an agreement to the underlying quantity of drugs. And we're not really arguing about quantity of drugs here at the underlying forfeiture. I think orders are nothing on leadership. It's your position. I think the forfeiture is maybe $23 million, but I can't remember for sure that someone can traffic 20, $23 million worth of cocaine single-handedly. Is that my position? Yes, you could be an intermediary. Someone who's a point of contact for buyers and sellers could easily be involved in hundreds of thousands of kilos of cocaine and millions. Maybe like the corner boy or the courier on the swift boat. But I think to be the, there's no information that he worked for anybody.  I think he was a cartel. I think the record is that he was a cartel of one. Okay. Any other questions? Thank you very much. Thank you very much. Both counsel, the case is submitted.
judges: Millett; Walker; Pan